# IN THE COURT OF APPEALS OF IOWA

No. 20-1701
Filed March 3, 2021

**IN THE INTEREST OF C.D.,**
**Minor Child,**

**W.D., Father,**
         Appellant.
_____

Appeal from the Iowa District Court for Jasper County, Steven J. Holwerda, District Associate Judge.

A father appeals the termination of his parental rights to his child. **AFFIRMED.**

Andrew J. Tullar of Tullar Law Firm, PLC, Des Moines, for appellant father.

Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant Attorney General, for appellee State.

Meegan M. Keller, Altoona, attorney and guardian ad litem for minor child.

Considered by Bower, C.J., and Doyle and Mullins, JJ.

**MULLINS, Judge.**

The child and parents came to the attention of the Iowa Department of Human Services (DHS) at the time of the child's birth in August 2018, when the child tested positive for THC. The mother admitted to using marijuana during the pregnancy. The family participated in voluntary services. A service provider conducted an unannounced drop-in at the family home in October, upon which the mother disappeared into the residence and would not allow the provider inside. Law enforcement officials were contacted and, upon entry into the home, an odor of marijuana was detected. The mother also reported the father subjected her to domestic violence. In response, the State filed a child-in-need-of-assistance petition. The child remained in the parents' care, and the parents agreed to random drug testing. The court adjudicated the child to be in need of assistance pursuant to the stipulation of the parties. Shortly thereafter, the mother reported ongoing domestic violence in the home. DHS relocated the mother and child. After the mother returned to the family home with the child a few days later, the State sought and obtained an order for temporary removal of the child from parental care.

The parents agreed to safety services involving the parents not residing together or being in one another's presence outside approved contact. Pursuant to those conditions and others, the court, in December, returned the child to the mother's care, subject to DHS supervision. Then, in early January 2019, the State again sought and obtained an order for removal based on the parents residing together with the child, ongoing tension between the parents, and subpar living

conditions in the family home. The parents stipulated to continued removal at a formal removal hearing.

In early February, the father was arrested for false imprisonment of the mother and assault on a police officer, to both of which he subsequently pled guilty. He was arrested again in June; this time on charges of first-degree harassment and eluding relative to an incident also involving the mother, despite the existence of a no-contact order between the parents. This occasion involved a "rolling domestic," with the father hitting the mother while the two were traveling in a vehicle. The father pled guilty to both charges. In August, the father stipulated to violating his probation resulting from a prior conviction of possession of marijuana with intent to deliver. His probation was revoked and an indeterminate term of imprisonment not to exceed five years was imposed. In his testimony at the termination hearing, the father reported he was using methamphetamine on a daily basis prior to his incarceration.

The State filed a termination petition in September 2019. Following a combined permanency and termination hearing in December, the court denied the petition and granted the parents an additional six months to work toward reunification. The father remained incarcerated until late September 2020. While in prison, the father was generally consistent with his visits he was allowed with the child and participated in programming that was available to him. The mother reported she began staying with the father following his release from prison, she is pregnant with a second child, the unborn child is the father's, and the father continues to subject her to domestic violence.

The child at issue has been in the same foster care placement since July 2019. He is thriving in this placement, and the foster parents are willing and able to adopt upon termination.

The State filed its second termination petition in October 2020. Following a trial, the juvenile court terminated the father's parental rights pursuant to Iowa Code section 232.116(1)(h) (2020).[1] The court highlighted "the father's history, his lack of progress to date, his only recent release from prison, and the fact that he 'has a lot of work to do' before the child could be returned to his care," and concluded "the child cannot be returned to the custody of the father at the present time or in the immediate future." The court determined termination followed by adoption by the foster parents to be in the child's best interests. The court denied the father's request for an additional six months to work toward reunification and declined to apply a permissive exception to termination.

The father appeals. He challenges the sufficiency of the evidence supporting the ground for termination cited by the juvenile court and argues termination is contrary to the child's best interests.[2]

Our review is de novo. *In re L.T.*, 924 N.W.2d 521, 526 (Iowa 2019). Our primary consideration is the best interests of the child, *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006), the defining elements of which are the child's safety and need for a permanent home. *In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011).

---

[1] The child's mother consented to termination of her parental rights. She does not appeal.

[2] On appeal, the father does not specifically request the application of a statutory exception to termination or additional time to work toward reunification, so we do not consider those issues. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010).

First, the father challenges the sufficiency of the evidence supporting termination under section 232.116(1)(h). The father only appears to challenge the final element of that provision—that the child could not be returned to his care at the time of the termination hearing. *See* Iowa Code § 232.116(1)(h)(4) (requiring clear and convincing evidence that the children cannot be returned to the custody of their parents at the present time); *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) (interpreting the statutory language "at the present time" to mean "at the time of the termination hearing"). He variously argues the court's circumstantial conclusions that the child could not be placed in his care were incorrect.

We acknowledge that the father was generally consistent with visits and participated in programming while imprisoned and that he obtained housing (a studio apartment) and employment and began substance-abuse treatment after he was released from prison. But the father's progress prior to his imprisonment can only be described as meager at best. And, after his release, the father still had not engaged domestic-violence services, which was one of the main concerns permeating the proceedings, along with substance abuse. The father has subjected the mother to horrific acts of domestic violence, and the evidence discloses the father and mother still have an ongoing relationship that continues to involve domestic violence, while the mother is pregnant with a second of the father's children. Given the significant history of domestic violence in the parents' relationship, the father's failure to engage in domestic-violence programming, and his ignorance of his aggressive and violent tendencies, we are unable to conclude the child could be placed in the father's care at the time of the termination hearing. In addition, the father had only been out of prison for a matter of weeks at the time

of the hearing and had yet to progress beyond fully supervised visits. Given the father's history, he would need to fully participate in services and demonstrate stability in an uncontrolled setting in the community for an extended period of time before the child could be placed in his care. Because he had not done so at the time of the termination hearing, we conclude the child could not be placed in the father's care and the evidence was sufficient to support termination under section 232.116(1)(h).

We turn to the child's best interests. In determining whether termination is in the best interests of a child, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). As noted, the defining elements of a child's best interests are safety and need for a permanent home. *H.S.*, 805 N.W.2d at 748. The father has simply not progressed to a point at which the child can be returned to his care. "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will . . . be able to provide a stable home for the child." *In re A.B.*, 815 N.W.2d 764, 777 (Iowa 2012) (quoting *In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010)). And the child's foster family has provided a loving and safe home and is willing to provide permanency. *Cf.* Iowa Code § 232.116(2)(b).

We commend the father for his recent steps, but he did not begin to take any meaningful steps to address the need for removal for roughly two years.

> There are a number of stern realities faced by a juvenile judge in any case of this kind. Among the most important is the relentless passage of precious time. The crucial days of childhood cannot be

suspended while parents experiment with ways to face up to their own problems. Neither will childhood await the wanderings of judicial process. The child will continue to grow, either in bad or unsettled conditions or in the improved and permanent shelter which ideally, at least, follows the conclusion of a juvenile proceeding.

The law nevertheless demands a full measure of patience with troubled parents who attempt to remedy a lack of parenting skills. In view of this required patience, certain steps are prescribed when termination of the parent-child relationship is undertaken under Iowa Code chapter 232. But, beyond the parameters of chapter 232, patience with parents can soon translate into intolerable hardship for their children.

*In re A.C.*, 415 N.W.2d 609, 613 (Iowa 1987). We find termination to be in the child's best interests, and we affirm the termination of the father's parental rights.

**AFFIRMED.**